UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVE CARPENTER and JANELLE CARPENTER, a marital community, d/b/a BBQ SHACK, L.L.C.

    Plaintiffs,

  v.

THE CITY OF SNOHOMISH, a Washington Municipal Corporation; et al.,

    Defendants.

CASE No. C06-0755-JCC

ORDER

**I.** **INTRODUCTION**

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 29), Defendants' Motions for Partial Summary Judgment (Dkt. Nos. 34 and 38), and the responses and replies thereto. Having considered the papers submitted by the parties on these motions and finding oral argument unnecessary, the Court finds and rules as follows.

**II.** **FACTS**

This suit arises out of Plaintiffs' decision to paint a mural on the side of their Snohomish, WA barbecue restaurant. The mural, painted by one of Plaintiffs' friends, features several dancing pigs, one pig on a grill, a hot air balloon, and, on the other side of the building, a classic car. The restaurant is

ORDER – 1

located in Snohomish's historic district and is subject to Snohomish's historic district design code. Snohomish's code of "Commercial Design Standards for the Historic District" contains the following language:

> Wall murals and artwork:
> Wall murals and other artwork of noncommercial nature shall be sympathetic to historical context.  Murals shall not become a predominating visual element of the streetscape and shall be subject to Design Review.

(Pl.'s Partial SJ Mot., Appx. B (Dkt. No. 30) at 3.)  The code also provides that signs

> may incorporate graphic symbols, logos, and other elements to provide visual interest and theme continuity. However, in order to preserve the 1880–1930s era visual landscape, corporate marketing themes, logos, corporate colors, and prototypes developed after 1930 shall not become a dominant visual feature of the site, or building.

(*Id.*) An appendix with detailed examples and photos depicting conforming and nonconforming designs is included in the code. (*Id.* at 4–9.)

After Plaintiffs' already-painted mural was rejected by the design board, Plaintiffs first appealed, then abandoned their appeal and instead filed a new compromise proposal in which they agreed to cover up the pigs and the hot air balloon in exchange for having their business permit granted. Several months later, the design board allowed the mural as originally painted, and Plaintiffs were able to remove the tarp covering the pigs and balloon.

Plaintiffs claim that due to the unconstitutionally vague design code and its arbitrary and capricious application by the design board, their restaurant's business permit was delayed, resulting in financial losses and emotional distress. Plaintiffs further claim that Defendants violated the First Amendment by suppressing Plaintiffs' commercial speech. Plaintiffs also make equal protection claims, as well as a claim under the Washington Constitution, Article 1, Section 12.  Plaintiffs additionally claim that they were defamed when, in response to media reports in which Plaintiffs characterized the City's rejection of the mural as being about the "naked pigs," Defendants called Plaintiffs liars or said they were lying, primarily in e-mails to various individuals and organizations who had written the City to complain about the City's decision. Plaintiffs claim that Defendants' actions, taken as a whole, amount to outrage,

ORDER – 2

and that Defendants were engaged in a civil conspiracy to deprive Plaintiffs of their rights. Plaintiffs claim financial losses and emotional distress on these claims as well.

Defendants move for summary judgment on all of Plaintiffs' claims. Defendants argue that Plaintiffs' suit should be dismissed either because they failed to exhaust their administrative remedies, or because it could only have been brought under Washington's Land Use Petition Act ("LUPA"). Defendants also argue that because the design board eventually let Plaintiffs keep their mural, Plaintiffs lack standing to pursue most of their claims, and that because the restaurant's opening would have been delayed in any event because Plaintiffs lacked a health department permit, Plaintiffs have no damages stemming from the restaurant's delayed opening. Defendants further claim that Plaintiffs failed to properly plead their due process claims, that Plaintiffs were not defamed, or if they were, they were limited-purpose public entities and must prove malice, that Plaintiffs cannot prove their conspiracy or outrage charges, and that Plaintiffs fail to allege membership in a protected class to support their equal protection[1] or state privileges and immunities claims.

Plaintiffs move for summary judgment on their facial and as-applied due process claims, arguing that the evidence, as developed thus far, is sufficient to prove that the design code is unconstitutionally vague and that it was arbitrarily and capriciously applied.

### III. ANALYSIS

#### A. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[1] Despite styling their motions as comprehensive as to "all" of Plaintiffs' claims, Defendants do not address Plaintiffs' speech claims as such. Nevertheless, because the First Amendment invokes a fundamental federal right, as discussed *infra* subsection III.F.2.b, and because "vagueness" claims are colorable both under the due process clause and the First Amendment, the Court will address the First Amendment here at the appropriate point in the equal protection analysis.

ORDER – 3

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A mere scintilla of evidence for the nonmovant's claim is not sufficient to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Instead, the party opposing summary judgment must come forward with significant probative evidence. *See Anderson*, 477 U.S. at 249–50. The party opposing summary judgment may not rest on conclusory allegations or mere assertions. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988); *Berg v. Kincheloe*, 794 F. 2d 457 (9th Cir. 1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Alternatively, the Court may dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted only if it "appears beyond doubt" that the pleading parties "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In deciding on the sufficiency of a claim, the Court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the pleading parties. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citations omitted). To state a claim, a plaintiff must sufficiently allege all elements of the claim. Dismissal is warranted "only if it appears to a certainty that [the pleading parties] would be entitled to no relief under any state of facts that could be proved." *Id.*

ORDER – 4

Despite the liberal standard, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat" dismissal for failure to state a claim. *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). When determining failure to state a claim, this Court may consider the face of the complaint, attachments thereto, and related court records. *See Kourtis v. Cameron*, 419 F.3d 989, 994 & n.2 (9th Cir. 2005). If a Court does not exclude evidence submitted by the parties beyond these parameters, a Rule 12(b)(6) motion is converted into a Rule 56 motion. FED. R. CIV. P. 12(b).

**B.     Defendant John Doe Guzak**

The parties agree that John Doe Guzak does not exist. There being no dispute of material fact on this issue, Defendant John Doe Guzak is hereby DISMISSED as a party.

**C.     Standing**

By construing Plaintiffs' pleadings as merely a request for review of the design board's decision, Defendants argue that Plaintiffs lack standing. (Def.'s Opp'n to Pl.'s Partial SJ Mot. (Dkt. No. 64) 10–12.) This argument lacks merit. Plaintiffs are seeking damages for a personal injury fairly traceable to Defendants' allegedly unlawful conduct. *See Allen v. Wright*, 468 U.S. 737 (1984). Accordingly, Plaintiffs have standing.

**D.     Washington's Land Use Petition Act ("LUPA")**

Defendants argue that Plaintiffs' claims, as a challenge to a land use action, are barred by LUPA, WASH. REV. CODE § 36.70C.005 *et seq.* However, LUPA does not apply to the instant case because Plaintiffs are not challenging the land use decision, but seeking damages for being subjected to a vague, arbitrary, and capricious permitting process. (Amend. Compl. (Dkt. No. 9) 14–15.) Actions for damages are among the specific exceptions to LUPA enumerated in the clear language of the statute, WASH. REV. CODE § 36.70C.030(1)(c). Moreover, the Supreme Court of Washington has held that LUPA does not apply to claims for monetary damages. *Grundy v. Thurston County*, 117 P.3d 1089, 1097 (Wash. 2005). Accordingly, LUPA does not bear on Plaintiffs' claims here.

//

ORDER – 5

### E. Exhaustion of Administrative Remedies

Plaintiffs are not required to exhaust administrative remedies where to do so would be futile or where the remedies offered by the administrative process would be patently inadequate. WASH. REV. CODE § 34.05.534(3)(a)–(b); *see also Dioxin/Organochlorine Ctr. v. Dep't of Ecology*, 837 P.2d 1007, 1015 (Wash. 1992); *Citizens for Clean Air v. City of Spokane*, 785 P.2d 447, 451–53 (Wash. 1990). Because Defendants introduce no evidence that Snohomish's administrative process can provide damages, and because an administrative agency can never rule as to the constitutionality of its own laws, *Bare v. Gorton*, 526 P.2d 379, 381 (Wash. 1974) (citing federal standard as well), Plaintiffs' *facial* constitutional claims and their defamation, conspiracy, and outrage claims do not have to be exhausted. These claims are addressed *infra* sections III.F and III.G.

However, Washington law does require Plaintiffs to exhaust administrative remedies before mounting an *as-applied* constitutional challenge to government action. *See Presbytery of Seattle v. King Cty.*, 787 P.2d 907, 916–18 (Wash. 1990); *Estate of Friedman v. Pierce Cty.*, 768 P.2d 462 (Wash. 1989). Because Plaintiffs have not exhausted their administrative remedies, Defendants are entitled to summary judgment on Plaintiffs' as-applied constitutional claims (and, conversely, Plaintiffs are not entitled to summary judgment on their as-applied due process claims). Accordingly, all of Plaintiffs' as-applied constitutional claims are hereby DISMISSED for failure to exhaust. The dismissed claims include the as-applied due process claims detailed in Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 29), as well as any as-applied aspects of Plaintiffs' federal equal protection claims, their state privileges and immunities claims, and their federal and state First Amendment / speech claims.

### F. Plaintiffs' Remaining Federal Claims

#### 1. *Conspiracy under 42 U.S.C. § 1985*

Plaintiffs do not specify which subsection of § 1985 they are invoking. Subsection (1) involves interfering with officers' performance of duties, and subsection (2) involves obstruction of justice. Plaintiffs' Amended Complaint is insufficient to allege a cause of action under either of these subsections.

ORDER – 6

Accordingly, the Court looks to subsection (3) as a possible source of a valid claim. To state a claim under § 1985(3), Plaintiffs must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Further, the second element of a § 1985(3) claim, as defined above, requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102. Plaintiffs do not plead, and introduce no scintilla of evidence to prove, that Defendants' actions were motivated by racial or other qualifying class-based animus. Defendants are entitled to summary judgment this claim and it is therefore DISMISSED.

### 2.    *Constitutional Claims under 42 U.S.C. § 1983*

To state a claim under § 1983, Plaintiffs must establish (1) that they were "deprived of a right secured by the Constitution or laws of the United States" and (2) that "the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). There is no dispute that Defendants are state actors. Accordingly, these claims are addressed according to the alleged deprivations of federal rights. Plaintiffs make the following § 1983 claims.

#### a.    *Due Process*

Plaintiffs claim that Snohomish's historic district sign regulations are so vague on their face that they violate Plaintiffs' right to due process. (Pl.'s Partial SJ Mot. 9–12.)[2] While Plaintiffs' argument is

---

[2] Defendants argue that Plaintiffs failed to plead their facial due process violations. (Def.'s Opp'n to Pl.'s Partial SJ Mot. 9.) While not detailed in this area, Plaintiffs' pleadings are sufficient to put Defendants on notice as to due process claims, and Defendants themselves point out that the facial due process argument had been raised by Plaintiffs in correspondence with Defendants (*id.* at 13), clearly giving Defendants notice that the claim would be in play. Accordingly, the Court will address it on its merits.

ORDER – 7

primarily based on state law, their due process claim is also colorable as a federal constitutional violation if the regulation is so vague that it fails to give notice of prohibited conduct or lends itself to arbitrary enforcement. *See Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926); *U.S. v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996).

However, to proceed with a federal due process challenge for facial vagueness, Plaintiffs must prove that the enactment is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). "Such a provision simply has no core." *Smith v. Goguen*, 415 U.S. 566, 578 (1974). In evaluating a facial challenge to a state law or regulation, the Court also considers any limiting construction that a state court or enforcement agency has proffered. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

Here, Plaintiffs fail to meet their burden. The minor misphrasings and areas of ambiguity that Plaintiffs point to in the sign code (Pl.'s Partial SJ Mot. 7) may be imprecise, but they do not completely fail to specify a standard of conduct. The sign standards specify materials, set forth detailed limits on size, and repeatedly focus on the aesthetics of the 1880–1930s era. (Pl.'s Partial SJ Mot., Appx. B at 2–3.) Accordingly, the standards are sufficient to prevent them from being facially vague under the federal due process standard.[3] For these reasons, Defendants are entitled to summary judgment on Plaintiffs' federal facial due process challenge to the Snohomish District Design Standards (and, conversely, Plaintiffs are not entitled to summary judgment on their federal facial due process claim). Accordingly, such claim is hereby DISMISSED.

### b.   *Equal Protection*

Defendants move for summary judgment on Plaintiffs' equal protection claim, arguing in a rather

---

[3] In addition, The City of Snohomish publishes an illustrated version of the sign standards, in which contrasting photographs illustrate imprecise concepts such as "dominant visual feature" or "detract[ing] from the building architecture." (Pl.'s Partial SJ Mot., Appx. B at 3.)

ORDER – 8

muddled fashion that Plaintiffs' claim fails because they are unable to show they were treated differently than others without a rational basis for the difference in treatment, and that to make such a showing, Plaintiffs must prove that they were singled out as members of a protected class. (Def.'s Partial SJ Mot. (Dkt. No. 34) 16.)

The first step in a federal facial equal protection analysis is for the Court to determine, as a matter of law, which level of scrutiny to apply to the statute or regulation at issue. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973). Where Plaintiffs can demonstrate that a statute implicates either a "suspect" ground, such as race, ancestry, alienage, or a fundamental federal right, strict scrutiny applies. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Where Plaintiffs can demonstrate that the law discriminates based on certain other quasi-suspect classifications, such as gender, intermediate scrutiny applies. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723–24 (1982). Where the statute burdens no suspect class and violates no fundamental right, the Court applies only rational basis review. *Olagues v. Russoniello*, 770 F.2d 791, 802 (9th Cir. 1985).

Here, Plaintiffs do not allege, and cannot prove, that the statute implicates any suspect class of which they are members.[4] However, in their surviving facial First Amendment claim, Plaintiffs do allege that the statute implicates a federally protected right. *See Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 101 (1972) ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives."). Therefore, to determine which level of scrutiny to apply in an equal protection analysis, the Court must first determine whether the statute, on its face, could violate Plaintiffs' First Amendment rights as a matter of law.

*(i)     Time, Place, or Manner Restrictions*

---

[4] While it is possible for a plaintiff to assert an equal protection claim as a "class of one," *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000), Plaintiffs do not assert that the sign code on its face singles them out. Rather, they claim that the code was discriminatorily applied to them. Plaintiffs' as-applied claims have already been dismissed, *supra* section III.E.

ORDER – 9

Content-neutral laws that incidentally burden speech are subject an intermediate level of scrutiny. *See Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *United States v. O'Brien*, 391 U.S. 367 (1968). The "principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. A regulation or ordinance which "serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

Although the regulations at issue here mention sign content ("in order to preserve the 1880s–1930s era visual landscape, corporate marketing themes, corporate colors, and prototypes developed after 1930 shall not become a dominant visual feature of the site, or building" (Pl.'s Partial SJ Mot., Appx. B at 2–3)), the sign standards do not seek to regulate the message communicated, but only the manner in which it is communicated. As such, Snohomish's sign regulations are a content-neutral regulation of the time, place, or manner of speech.

Content-neutral regulations are sustained if they further "an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. Such restrictions must be "narrowly tailored to serve a significant governmental interest" and they must "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. The requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). The regulation need not be the "least restrictive or least intrusive means" of advancing the Government's interests. *Ward*, 491 U.S. at 798.

Aesthetic considerations are a substantial government interest. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 807 (1984). As noted elsewhere, Snohomish's

ORDER – 10

historic district sign standards are focused on aesthetics. They provide guidelines but do not altogether prohibit a given message from being communicated. They are narrowly tailored to achieve the substantial interest in aesthetics. Thus, under the foregoing test for content-neutral regulations, the Court finds as a matter of law that Snohomish's code of design standards, on its face, does not unduly restrict First Amendment freedoms. Moreover, because commercial speech generally receives less constitutional protection than other forms of expression, *Central Hudson Gas & Elec. Co v. Public Serv. Comm'n*, 447 U.S. 557, 562–63 (1980), the foregoing finding that the design standards meet the test for content-neutral restrictions sufficiently assures the protection of both commercial and noncommercial speech that may be impacted by the restriction.

### (ii)  Prior Restraints and First Amendment Vagueness

Challenges to the facial vagueness of a content-neutral sign ordinance are also available under the First Amendment, either as an element of a prior restraint challenge, *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006), or as a freestanding challenge to the vagueness of the ordinance, *id.* at 1084–85. The prior restraint doctrine prohibits content-neutral laws from placing "unbridled discretion in the hands of government officials" in determining such things as whether to grant or deny a permit. *Id.* at 1082 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–26 (1990)). In order to "avoid impermissible discretion, the challenged ordinance should 'contain adequate standards to guide the official's decision and render it subject to effective judicial review.'" *Id.* (quoting *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002)).

The Court finds that Snohomish's historic district sign standards are specific enough to place meaningful limitations on officials' discretion. The standards reference particular historic era content and provide examples. As noted *supra* subsection III.F.2.a, the standards specify materials, set forth detailed limits on size, and repeatedly focus on the aesthetics of the 1880–1930s era. They are adequately definite. Further, as to application, the standards provide for a multi-person review of any proposal that is initially not found to be consistent with the design standards. (Pl.'s Partial SJ Mot., Appx. B at 3.) Combined

ORDER – 11

with sufficiently definite standards, the Court cannot find that this process constitutes "unbridled discretion."

A freestanding First Amendment challenge for vagueness proceeds via a similar analysis. *See G.K. Ltd. Travel*, 436 F.3d at 1084–86. In such a challenge, the kind of subjectivity that Plaintiffs note in the sign standards (*see* Pl.'s Partial SJ Mot. 7), is considered reasonable as part of a design review process because, otherwise, governments would be prohibited from addressing problems—like aesthetics and historical consistency—that are difficult to define with objective precision. *See G.K. Ltd. Travel*, 436 F.3d at 1085 (citing *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005); *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001).)

For the foregoing reasons, the Court finds that under either type of First Amendment vagueness analysis, Plaintiffs cannot establish that Snohomish's sign standards violate Plaintiffs' First Amendment rights.  The regulations are not unconstitutionally vague.

### (iii)   Commercial–Noncommercial Speech Distinction

Plaintiffs raise the issue that Snohomish's "commercial" design standards reference "noncommercial" artwork, insisting that this provision should not apply to their "commercial" mural. (*See* Pl.'s Partial SJ Mot. 7.) An ordinance "is invalid if it imposes *greater* restrictions on noncommercial than on commercial" speech. *G.K. Ltd. Travel*, 436 F.3d at 1081 (emphasis added) (internal quotations and citations omitted). The Court has already found that the regulations at issue here are content-neutral. Accordingly, the use of both terms in the language of the design standards is immaterial. Moreover, because commercial speech is accorded *less* protection, Plaintiffs cannot complain that they have been treated less favorably by having a constitutionally compliant "noncommercial" restriction applied to them.

*   *   *

Because Plaintiffs can establish neither membership in a protected class nor violation of a protected federal right, their equal protection challenge may proceed only via a rational basis review. Under rational basis review,"the general rule is that legislation is presumed to be valid and will be

ORDER – 12

sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1986). All classifications drawn by the historic district regulations are rationally related to Snohomish's legitimate interest in maintaining the aesthetic and historic appearance of the historic district. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' federal facial equal protection challenges to the Snohomish District Design Standards, and such claims are hereby DISMISSED.

### c. *First Amendment*

Plaintiffs' separately-pled federal First Amendment claims are DISMISSED for the reasons discussed *supra* subsection III.F.2.b under the equal protection analysis.

### G. Plaintiffs' State Law Claims

Having dismissed all of Plaintiffs' federal claims over which this Court had original (federal question)[5] jurisdiction, either for failure to exhaust, failure to state a claim, or on the merits, the Court hereby DECLINES to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3). The Court additionally declines to exercise supplemental jurisdiction pursuant to *id.* § 1367(c)(1), because Plaintiffs' remaining state law claims raise complex state constitutional and land use issues more appropriately determined by the state courts. Accordingly, Plaintiffs' remaining state constitutional and tort claims are hereby DISMISSED without prejudice.

Finally, the Court notes that the parties raise a number of evidentiary issues. Because these issues are germane only to the merits of the dismissed state claims, the Court does not reach them here.

## IV. CONCLUSION

For the reasons set forth in this Order, the Court:

(1)   DISMISSES Defendant John Doe Guzak from this action;

---

[5] The parties are not diverse, and therefore cannot establish federal jurisdiction under 28 U.S.C. § 1332. Accordingly, federal question jurisdiction under 28 U.S.C. § 1331 was the sole basis for this Court's original jurisdiction.

ORDER – 13

(2)  DENIES Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 29);

(3)  GRANTS IN PART Defendants' Motion for Partial Summary Judgment Re All Claims Except Defamation (Dkt. No. 34) and Defendants' Motion for Partial Summary Judgment Re Defamation (Dkt. No. 38), as follows:

(a)  all of Plaintiffs' as-applied Washington and United States constitutional challenges to the Snohomish District Design Standards are DISMISSED for failure to exhaust administrative remedies;

(b)  Plaintiffs' federal conspiracy claim brought pursuant to 42 U.S.C. § 1985 is DISMISSED for failure to state a claim;

(c)  all of Plaintiffs' facial challenges to the constitutionality of the Snohomish District Design Standards brought pursuant to 42 U.S.C. § 1983 and alleging federal due process, equal protection, and First Amendment violations, are DISMISSED with prejudice;

(d)  Plaintiffs' remaining facial challenges to the Snohomish District Design Standards under the Washington constitution are DISMISSED without prejudice; and

(e)  Plaintiffs' remaining state tort claims for defamation and commercial disparagement, conspiracy, and outrage are DISMISSED without prejudice.

The June 25, 2007 trial date in this matter is STRICKEN and the Clerk is hereby directed to CLOSE this case.

SO ORDERED this 13th day of June, 2007.

John C. Coughenour
United States District Judge

ORDER – 14